## AFFIDAVIT

I, HOLLY FURNE RN, hereby affirm as follows:

1. That, on or about February 23, 2005, I was employed as a night shift RN by FIRST CORRECTIONAL MEDICAL, at DELAWARE CORRECTIONAL FACILITY, Smyrna, Delaware where inmate GERRON M. LINDSEY was incarcerated in the SuperMaximum Housing Unit, hereinafter known as the SHU.

2. That in the Nurse's job duties I was required to pass medications to inmates throughout the facility and provide urgent or emergent care to inmates on a scheduled and unscheduled basis.

3. That in my experience as a Registered Nurse, I was required to be knowledgeable about several hundred inmates' medication requirements and medical conditions, including Inmate LINDSEY'S' history of ALLERGIES and ASTHMA.

4. That I had administered asthma medications frequently to Inmate LINDSEY and others, including nebulizer treatments and metered dose inhalers.

5. That the night shift Nurses had to begin medication pass at approximately 2:30 a.m. and continuing until 4:30-5:00 a.m. in the SHU, where Inmate LINDSEY was housed.

6. That Nursing Staff would request Correctional Officers to bring out inmates to the medical office or escort the Nurse to the tier to see the inmate, as staffing or circumstances required.

7. That Nursing Staff also had scheduled time to conduct Inmate Sick Call with Correctional Officers to be made available to remove the Inmate from his cell, apply handcuffs and leg-shackles, and prevent any untoward incidents between Inmate and medical staff.

05cv632 SLR
FILED
APR 3 – 2007
COURT
DISTRICT OF DELAWARE

8. That Inmate LINDSEY complained to this Nurse or to the Corectional Officer assigned to his tier that he was short of breath, felt chest tightness, and was wheezing more severely, which was minimally responsive to use of his metered-dose inhalers, such that this Nurse requested Correctional staff to bring Inmate LINDSEY to the medical office in the building after medication-pass for more complete assessment, peak flow measurement and nebulized albuterol treatment, with referral to the MD for possible additional medications.

9. Based on Inmate LINDSEY's past history of severe asthma exacerbations, this Nurse deemed it necessary to bring Inmate LINDSEY out for treatment both due to the severity of the problem, his past history, and lack of physician and Nurse Practitioner coverage/appointments in a timely fashion.

10. That on or about the morning of February 23, 2005, Inmate Lindsey complained to either this Nurse or the Correctional Officer that he felt more short of breath than usual and this Nurse requested the Correctional Officers bring Inmate Lindsey to the medical office for re-evaluation, with the intention of trying to "squeeze" the Inmate into the MD's schedule when she arrived at the SHU later that day.

11. That Inmate LINDSEY was brought down, assessed again from the previous night, found to still be "tight" with a poor peak flow for a young athletic male, and given a repeat nebulized albuterol treatment when the first treatment only produced minimal relief, as was common procedure in the facility and in the community, such as the ED where this RN currently works.

12. That when the second treatment gave some additional benefit but Inmate LINDSEY wasn't certain if he could last the few hours necessary to wait to see the MD, or if he would even be able to see the MD that day, and SHU Inmates could not be readily

taken across the Compound to see a provider there, this Nurse opted to administer a third treatment, since the peak flow was still unsatisfactory.

13. That at this time it was approximately 8:30 a.m. and Sergeant Bellinger came by the medical office and very angrily told this Nurse that she had to "stop the breathing treatment" in progress, that he "couldn't tie up his officers for this period of time" and told the officers to "take LINDSEY to the interrogation room", at which time the officers picked LINDSEY up off the stool and proceeded to take him out of the office rapidly.

14. That this Nurse protested to Sergeant Bellinger that Inmate LINDSEY had severe asthma that needed treatment and that it could be dangerous to cease treatment since FIRST CORRECTIONAL MEDICAL was very short-staffed and his condition could worsen, potentially to a life-threatening level.

15. Sergeant Bellinger continued to yell at this Nurse and Inmate LINDSEY, becoming red-faced, angrily gesticulating and shouting that he "didn't care, he (Inmate LINDSEY) had taken up enough of my officers' time", causing Inmate LINDSEY to say, "it's all right, if you give me a new inhaler, I think I can get by" or words to that effect, at which time LINDSEY tendered the empty inhaler to receive a new one.

16. This Nurse watched the officers practically drag Inmate LINDSEY to the Interrogation/Interview room, as I had seen correctional officers be physically forceful with LINDSEY in the past, to make sure the officers and Sergeant Bellinger did not strike Lindsey.

17. This RN had witnessed Sergeant Bellinger make comments to Inmate LINDSEY that appeared provocative in the past, for reasons not apparent to this Nurse and incongruent with other superior officers' conduct toward this Inmate and other inmates.

18. That Lieutenant Secord (not Captain Sager as described in Affidavit dated 12-21-05) came by the medical office immediately after Sergeant Bellinger stopped LINDSEY's treatment and apologized for Sergeant Bellinger's rudeness and stated medical staff did indeed have the present time available and that Sergeant Bellinger acted improperly in pulling LINDSEY out of his treatment.

19. This RN then left the building and saw Inmate Lindsey handcuffed to the chair in the Interrogation room with Sergeant Bellinger appearing to be berating Inmate Lindsey.

20. This RN then went to the SHU medical office, tried to locate Inmate Lindsey's chart, was unable to do so, and thus left a note on the desk for the MD, requesting that the MD see Inmate Lindsey that day if at all possible since his asthma symptoms were worse than usual and were not helped adequately by his inhalers and the nebulizer treatments.

_____
HOLLY FURNE, RN


_____
NOTARY PUBLIC



M. MICHELLE PREITE
Notary Public
STATE OF TEXAS
My Commission
Expires 01/22/2011

CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2007, I submitted the Affidavit of Plaintiff's witness Holly Furne to the clerk of court by United States Postal Service. I hereby certify that on March 24, 2007, I have mailed by United States Postal Service, the document to: Ralph K. Durstein, Deputy Attorney General.

Gerron M. Lindsey

SBI No. 326202

D.C.C.

1181 Paddock Road

Smyrna, DE 19977

I/M Gerron Lindsey
SBI# 326202    UNIT MB 17
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

March 24, 2007
LEGAL MAIL

U.S. District Court - Clerk
Lockbox 18 - Boggs Federal Building
844 King Street
Wilmington, Delaware
19801