## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GERRON MAURICE LINDSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 05-632-SLR |
| | ) | |
| ATTORNEY GENERAL JANE BRADY, | ) | JURY TRIAL DEMANDED |
| WARDEN THOMAS CARROLL, | ) | |
| COMMISSIONER STANLEY TAYLOR, | ) | |
| BUREAU CHIEF PAUL HOWARD, | ) | |
| INTERNAL AFFAIRS, SERGEANT | ) | |
| JOSEPH BELANGER, CORPORAL | ) | |
| LISE MERSON, and C/O ROSALIE | ) | |
| VARGUS, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### BACKGROUND

The Complaint in this *pro se* prisoner civil rights action was filed on August 29, 2005 against Defendants Jane Brady, Thomas Carroll, Stanley Taylor, Paul Howard, Internal Affairs, Joseph Belanger, Lise Merson and Rosalie Vargas (collectively, "Defendants"). [D.I. 1].

On March 13, 2007, pursuant to stipulation between the parties, Plaintiff's claims against Defendant Jane Brady were dismissed with prejudice. [D.I. 55].

Plaintiff was deposed on October 13, 2006. The deposition transcript is attached hereto as Exhibit A.

This is Defendants' Memorandum and Points of Authorities in support of their Motion for Summary Judgment.

## **FACTS**

In February 2005, Plaintiff was within the custody of the Delaware Department of Correction ("DOC") incarcerated at the Delaware Correctional Center ("DCC") in Smyrna, Delaware. He was housed in Building 17, which is part of the Secure Housing Unit ("SHU") at DCC. *See* Belanger Affidavit attached hereto as Exhibit B.[1]

At that time, Plaintiff was a chronic care asthma patient. [D.I. 1]. He was prescribed two inhalers: Qvar, which was to be taken twice a day, and Albuterol, which was to be taken when he experienced shortness of breath. *Id.* If the shortness of breath persisted, Plaintiff would contact security staff who would then contact the medical department. *Id.*

Plaintiff alleges that, on the morning of February 23, 2005, he was in his cell when he began to experience shortness of breath. His symptoms did not respond to the Albuterol inhaler. He contacted security and was taken to the medical office in Building 17. Exhibit A at 6 – 9. In the medical office he was seen by Nurse Holly Furne ("Nurse Furne"), who proceeded to administer a breathing treatment. [D.I. 1]; Exhibit A at 10.

Plaintiff claims that he had been in the office for five to ten minutes receiving the breathing treatment, when Defendant Joseph Belanger ("Sgt. Belanger") entered the medical office and forced Nurse Furne to end the treatment. [D.I. 1]; Exhibit A at 12. Plaintiff claims that Sgt. Belanger stated that the treatment was preventing him from doing his work. Exhibit A at 12. According to Plaintiff, Sgt. Belanger said that he would write-up Plaintiff and Nurse Furne for wasting his time. *Id.* at 14.

---

[1] Due to exigent circumstances, the Affidavit attached as Exhibit B does not include a signature. The original, signed Affidavit will be filed separately.

Sgt. Belanger and two other officers then took Plaintiff to the shower where they strip searched him. *Id.* at 14-15. Plaintiff claims that Sgt. Belanger looked his body over, then returned Plaintiff's clothes and left the area. [D.I. 1]. At that time, Plaintiff asked to see a mental health counselor. This request was accommodated. Plaintiff spoke with a counselor and shortly thereafter was returned to his cell. Exhibit A at 15-17. When he was returned to his cell, Plaintiff was given a new inhaler. *Id.* at 17.

Plaintiff alleges that when the breathing treatment was terminated, he was still experiencing shortness of breath and tightness in his chest. *Id.* at 13. His symptoms continued when he was returned to his cell. However, he did not use his inhaler. He laid down on his bed and "got through it." *Id.* at 18. Plaintiff's breathing returned to normal at some point, although he could not specify when. *Id.* He has no continuing physical problems due to the incident in the medical office. *Id.* at 29.

Sgt. Belanger prepared an incident report in connection with the events of February 23, 2005 due to staffing problems posed by Plaintiff's presence in the medical office. *See* Incident Report attached hereto as Exhibit C. For security reasons, Plaintiff was accompanied by two officers during the breathing treatment. Due to this circumstance and various other activities in Building 17 that morning, telephone punches and tier checks were not accomplished as required by prison procedures. *Id.*

Sgt. Belanger denies that he forced Nurse Furne to end Plaintiff's breathing treatment. [D.I. 47]. *See also* Exhibit B at ¶10.

Prior to his arrival at the medical office, Sgt. Belanger learned that Nurse Furne was not supposed to be in Building 17 at that time. He had also previously received information that Nurse Furne and Plaintiff may have been having a personal relationship.

This information, coupled with Plaintiff's presence in the medical office with Nurse Furne, presented security concerns regarding the possible passing of contraband. Sgt. Belanger therefore proceeded to have Plaintiff undergo a strip search before he was returned to his cell. Exhibit B.

Plaintiff did not appear to Sgt. Belanger to be in medical distress. Further, although Plaintiff asked to speak with a mental health worker, he did not ask for medical assistance. *Id.*

Plaintiff filed a grievance complaining that Sgt. Belanger forced Nurse Furne to end the breathing treatment and then had him strip searched. He asserted that Sgt. Belanger was harassing him. *See* Grievance attached hereto as Exhibit D.

Plaintiff states that he met with Defendants Lise Merson and Rosalie Vargas in connection with his grievance, which was found to be non-grievable. Exhibit A at 22-23. He claims that Defendants Merson and Vargas failed to investigate his complaint and therefore handled the grievance improperly. He does not allege that he sustained any physical injury due to the handling of his grievance. *Id.* at 29-30.

He also claims that he spoke with someone from DCC's Internal Affairs regarding his complaints against Sgt. Belanger and nothing was done. He could not recall who he spoke with. *Id.* at 24, 28.

Finally, Plaintiff states that he made Defendants Stanley Taylor and Paul Howard aware of his complaints against Sgt. Belanger by letter after the incident. *Id.* at 27-28. He received no response to this correspondence. *Id.*

In his Complaint, Plaintiff seeks monetary damages only. [D.I. 1].

# ARGUMENT

## I. STANDARD FOR SUMMARY JUDGMENT.

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A fact is material if its resolution will affect the outcome under the applicable law, and an issue about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When considering a Motion for Summary Judgment, the court must view the evidence in the light most favorable to the nonmoving party. *O'Donnell v. United States*, 891 F.2d 1079, 1082 (3d Cir. 1989). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any..." which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 323-25 (1986). Once the movant satisfies this burden, the non-moving party must demonstrate to the court that sufficient evidence exists from which a jury might return a verdict in its favor. *Id.* The mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249.

For the reasons stated herein, Defendants are entitled to judgment as a matter of law because Plaintiff cannot present evidence which demonstrates any disputed genuine issue as to any material fact.

## II. UNDER THE ELEVENTH AMENDMENT, DEFENDANTS CANNOT BE HELD LIABLE IN THEIR OFFICIAL CAPACITIES.

Plaintiff has sued Defendants in both their individual and official capacities. [D.I. 1]. However, "in the absence of consent, a suit [in federal court] in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This preclusion extends to state officials when "the state is the real, substantial party in interest." *Id.* at 101 (*quoting Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). "Relief sought nominally against an [official] is in fact against the sovereign if the decree would operate against the latter." *Id.* (*quoting Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). A State may waive its Eleventh Amendment immunity. However, such waiver must constitute an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Ospina v. Dep't of Corrections*, 749 F. Supp. 572, 578 (D. Del. 1990) (*quoting Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)).

In this case, the State of Delaware has neither consented to Plaintiff's suit nor waived its immunity. Therefore, under the Eleventh Amendment, Defendants cannot be held liable in their official capacities.

### III. INTERNAL AFFAIRS IS NOT A "PERSON" WITHIN THE MEANING OF SECTION 1983 AND CANNOT BE HELD LIABLE TO PLAINTIFF.

To state a claim under 42 *U.S.C.* § 1983, Plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff has named DCC's Internal Affairs as a defendant in this action. Internal Affairs is an agency of the State of Delaware. *See, e.g., Evans v. Division of Probation and Parole,* 2004 WL 2009369, at *2 (D. Del. Aug. 25, 2004) (Exhibit E) (holding that Department of Correction's Division of Probation and Parole was an agency of the State). Consequently, Internal Affairs is not a "person" within the meaning of 42 *U.S.C.* § 1983. *Id. See also Ospina*, 749 F. Supp. at 577.

Because Internal Affairs is not a "person" within the meaning of Section 1983, it cannot be held liable to Plaintiff and is entitled to judgment as a matter of law.

### IV. DEFENDANT THOMAS CARROLL IS ENTITLED TO JUDGMENT BECAUSE THERE ARE NO ALLEGATIONS AGAINST HIM.

Defendant Thomas Carroll is listed in the caption in this action and mentioned as a defendant in the body of the Complaint. However, the Complaint includes no allegations against him. [D.I. 1]. Further, Plaintiff has indicated that he does not plan to proceed with his action against Defendant Carroll. Exhibit A at 27.

Therefore, Defendant Thomas Carroll is entitled to judgment as a matter of law.

V.  **PLAINTIFF HAS FAILED TO STATE A CONSTITUTIONAL CLAIM AGAINST DEFENDANTS MERSON, VARGAS, TAYLOR AND HOWARD.**

Plaintiff's claims against Defendants Merson and Vargas are based on his allegations that they failed to properly investigate his grievance pertaining to Sgt. Belanger's conduct on February 23, 2005. Similarly, Plaintiff asserts that Defendants Taylor and Howard failed to respond to his letter complaint about Sgt. Belanger.

While prisoners have a constitutional right to seek redress of grievances as part of their right of access to the courts, this right is not compromised by the failure of prison officials to address these grievances. *Booth v. King*, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004). This is because inmates do not have a constitutionally protected right to a grievance procedure. *Burnside v. Moser*, 138 Fed. Appx. 414, 415 (3d Cir. 2005) (attached hereto as Exhibit F). Further, the existence of a grievance procedure does not confer prison inmates with any substantive constitutional rights. *Hoover v. Watson,* 886 F. Supp. 410, 418-419 (D. Del.), *aff'd*, 74 F.3d 1226 (3d Cir. 1995). Thus, the failure to investigate a grievance does not present a constitutional issue. *Brown v. Department of Correction,* 2005 WL 344065, at *3 (D. Del. Dec. 15, 2005) (attached hereto as Exhibit G).

In *Brown*, 2005 WL 3440645, plaintiff alleged that he had been assaulted by a correctional officer. He claimed that he wrote letters to the prison warden and filed grievances, and no investigation was done. The court found that the plaintiff had failed to state a constitutional claim: "Plaintiff cannot maintain a constitutional claim based upon his perception that his grievances, complaints and communications were not

8

investigated." *Id.* at *3. Plaintiff's claims were dismissed as frivolous. *See also Lewis v. Williams,* 2006 WL 538546, at *6-7 (D. Del. March 6, 2006) (attached hereto as Exhibit H) (plaintiff's claims against commissioner and warden for failure to investigate complaint dismissed as frivolous).

Plaintiff's claims against Defendants Merson, Vargas, Taylor and Howard are based solely on his allegations that they did not respond to his grievances and complaints and did not investigate his claim against Sgt. Belanger. These allegations fail to state a constitutional violation against these Defendants, and they are entitled to judgment as a matter of law.

## VI. DEFENDANT JOSEPH BELANGER IS ENTITLED TO SUMMARY JUDGMENT.

### A. DEFENDANT JOSEPH BELANGER WAS NOT DELIBERATELY INDIFFERENT TO PLAINTIFF'S SERIOUS MEDICAL NEEDS.

Plaintiff has alleged that Sgt. Belanger terminated the breathing treatment that he was receiving in the medical office. Thus, he is, in effect, claiming that Sgt. Belanger violated his constitutional right to adequate medical care.

To recover for the denial of medical care under the Eighth Amendment, an inmate must show that the prison official was deliberately indifferent to his serious medical needs or acted with reckless disregard for his condition. *Miller v. Correctional Medical Systems, Inc.,* 802 F. Supp. 1126, 1130 (D. Del. 1992). The "deliberate indifference" requirement is satisfied only if the prison official "knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). A prison official is

deliberately indifferent to the medical needs of an inmate when there is a strong likelihood that harm will occur and the prison official knew or should have known of that strong likelihood. The mere possibility of harm is insufficient to satisfy the deliberate indifference requirement. *Colburn v. Upper Darby Township,* 946 F.2d 1017, 1024 (3d Cir. 1991).

"An inmate's condition is 'serious' when it is so obvious that an ordinary person would easily recognize the need for a doctor's attention or when a physician has concluded that treatment is required." *Brathwaite v. Carroll,* 2006 WL 839385, at *8 (D. Del. March 29, 2006) (attached hereto as Exhibit I). The "seriousness" requirement is also satisfied if the effect of denying or delaying medical care results in the wanton infliction of pain or a life-long handicap or permanent loss. *Monmouth County Correctional Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987). In addition, the inmate's "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury or death. *Colburn,* 946 F.2d at 1023.

There is a factual dispute as to whether Sgt. Belanger ordered Nurse Furne to terminate Plaintiff's breathing treatment. However, even assuming that Sgt. Belanger did so, the evidence does not establish deliberate indifference. Plaintiff did not appear to be in physical distress. When Plaintiff was taken to the showers to be strip searched, he asked to speak to a mental health worker, but did not request medical assistance. Plaintiff was returned to his cell, where he was provided with an inhaler. He was able to lie down and wait for the shortness of breath to pass. Given these circumstances, Plaintiff cannot establish that Sgt. Belanger knew or should have known that there was a strong likelihood that Plaintiff would be harmed.

10

For the same reasons, Plaintiff cannot demonstrate that he was experiencing a serious medical need. Any interruption in medical care did not result in the wanton infliction of pain, a life-long handicap or a permanent loss. His condition was not such that a failure to treat could be expected to lead to substantial and unnecessary suffering, injury or death. Plaintiff experienced a brief period of discomfort, which he had been experiencing prior to being escorted to the medical office. He chose not to use his inhaler. He rested in his cell until his symptoms resolved. There is no evidence that he put in a sick call slip or requested further medical attention. Plaintiff admitted that he has had no ongoing medical problems related to the termination of his breathing treatment.

In *Bates v. Sullivan,* 6 Fed. Appx. 425, 426 (7th Cir.), *cert. denied,* 534 U.S. 850 (2001) (attached hereto as Exhibit J), plaintiff claimed that defendant correctional officer was deliberately indifferent to his serious medical needs when he refused to give him his asthma inhaler. Plaintiff claimed that he consequently experienced headaches and shortness of breath. The court found that these symptoms were not serious enough to implicate the Eighth Amendment. *Id.* at 428. *See also Oliver v. Deen,* 77 F.3d 156, 160 (7th Cir. 1996) (asthmatic plaintiff did not show serious medical need where exposure to cigarette smoke caused him to wheeze and show other signs of discomfort).

In this case, Plaintiff experienced relatively minor symptoms of limited duration subsequent to the termination of his breathing treatment. Temporary shortness of breath and discomfort do not rise to the level of a constitutional violation.

In short, the evidence fails to show that Sgt. Belanger was deliberately indifferent to Plaintiff's serious medical needs, and therefore, he is entitled to summary judgment on this claim.

### B.   THE STRIP SEARCH DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS.

Plaintiff also claims that Sgt. Belanger violated his constitutional rights when he subjected him to a strip search. This claim is not supported by the facts or the law.

An inmate does not have a Fourth Amendment right to be free from strip searches, which may be conducted without probable cause provided that the search is conducted in a reasonable manner. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). The reasonableness of a search is determined by balancing the need for the search against the invasion of personal rights involved. *Id.* at 559. Where there is no allegation of excessive force or injury resulting from the search, routine strip searches have been found to be reasonable. *See Wilson v. Harmon,* 2003 WL 21844285, at *2 (D. Del. July 31, 2003) (attached hereto as Exhibit K). In addition, strip searches may be conducted in the presence of other guards and prisoners. *Id.*

In *Wilson,* plaintiff claimed that during a cell shake down, he was required to exit his cell and strip naked. The strip search was conducted in plain view of other inmates. *Id.* at *1. The court concluded that, given the fact that plaintiff alleged no physical harm or that force was used during the search, the conduct at issue did not rise to the level of a constitutional violation. *Id.* at *2.

In this case, Sgt. Belanger conducted the strip search of Plaintiff due to valid security concerns. For the second day in a row, Plaintiff was being seen in the medical office by a nurse who was not supposed to be in the area and who may have been having a personal relationship with him. *See* Exhibit B. To ensure that Nurse Furne had not passed contraband to Plaintiff, Sgt. Belanger required Plaintiff to undergo a strip search. There are no allegations that force was used or that Plaintiff sustained any injury. After

12

the search, Plaintiff's clothing was returned to him and he was taken to another area to meet with a mental health counselor.

On these facts, there is no basis for holding Sgt. Belanger liable to Plaintiff. The strip search did not rise to the level of a constitutional violation, and Sgt. Belanger is entitled to judgment on this claim as a matter of law.

### VII. PURSUANT TO THE PRISON LITIGATION REFORM ACT, PLAINTIFF IS NOT ENTITLED TO COMPENSATORY DAMAGES.

Plaintiff in this action brings a *pro se* complaint, filed while he was incarcerated, regarding the conditions of his confinement. Plaintiff alleges claims under 42 *U.S.C.* § 1983. The Prison Litigation Reform Act ("PLRA") of 1995 became effective on April 26, 1996, and amended a variety of statutory provisions governing litigation by prisoners, specifically including those brought under 42 *U.S.C.* §1983. Accordingly, the PLRA is applicable to this matter.

The PLRA mandates that an *in forma pauperis* plaintiff demonstrate physical injury as a pre-requisite to recovery for any mental or emotional injury. 42 *U.S.C.* § 1997e(e) states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

The Third Circuit has interpreted § 1997e(e) to require more than *de minimis* injury.

> We believe that reading 1997e(e) to allow a plaintiff to allege any physical injury, no matter how minor, would produce an unintended (indeed absurd) result. Were we not to read 1997(e) as requiring more than a *de minimis* physical injury, we would turn its physical injury prerequisite into a mere pleading requirement, thereby rendering the requirement meaningless as a practical

13

matter.

*Mitchell v. Horn*, 318 F.3d 523, 535 (3d Cir. 2003).

In this case, Plaintiff's only claim of physical injury is a limited period of shortness of breath which he experienced after his breathing treatment was terminated. When he returned to his cell, he had an inhaler, which he did not use. He laid down on his bunk until the symptoms resolved. He does not claim any residual physical complaints related to the February 23, 2005 incident.

Plaintiff's limited experience of shortness of breath constitutes nothing more than a *de minimis* injury. In *Sarro v. Essex County Correctional Facility,* 84 F. Supp. 2d 175, 178 (D. Mass 2000) plaintiff was required to keep his cell windows shut for three days and nights in July 1998. He claimed that during the period when the windows were shut, he was not "breathing normally" and needed to use his inhaler to help him breathe normally. *Id.* at 177. The court found that these allegations did not satisfy the physical injury requirement of Section 1997e(e). *Id.* Similarly, in *Hawkins v. Trents Flying Service,* 45 Fed. Appx. 325 (5th Cir. 2002) (attached hereto as Exhibit ), the court found that an inmate's difficulty in breathing upon occasional exposure to hazardous chemicals did not satisfy the requirements of the PLRA.

Plaintiff's allegations of shortness of breath, which resolved after a period time, do not meet the physical injury requirement of the PLRA. Therefore, he is not entitled to compensatory damages, and Defendants are entitled to judgment as a matter of law on this issue.

## VIII. CONCLUSION

WHEREFORE, for the reasons set forth herein, Defendants respectfully request that this Court grant summary judgment in their favor.

                              **STATE OF DELAWARE**
                              **DEPARTMENT OF JUSTICE**

                              /s/ Ralph K. Durstein III
                              Ralph K. Durstein III, I.D. #912
                              Deputy Attorney General
                              820 N. French St., 6th Floor
                              Wilmington, DE 19801
                              (302) 577-8400
                              ralph.durstein@state.de.us
                              Attorney for Defendants

Dated: April 12, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2007, I electronically filed *Defendants' Memorandum of Points And Authorities In Support of Their Motion for Summary Judgment* with the Clerk of Court using CM/ECF. I hereby certify that on April 12, 2007, I have mailed by United States Postal Service, the document to the following non-registered party: Gerron M. Lindsey.

/s/ Ralph K. Durstein III
Deputy Attorney General
Department of Justice
820 N. French St., 6th Floor
Wilmington, DE 19801
(302) 577-8400
ralph.durstein@state.de.us