IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GERRON MAURICE LINDSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 05-632-SLR |
| | ) | |
| ATTORNEY GENERAL JANE BRADY, | ) | JURY TRIAL DEMANDED |
| WARDEN THOMAS CARROLL, | ) | |
| COMMISSIONER STANLEY TAYLOR, | ) | |
| BUREAU CHIEF PAUL HOWARD, | ) | |
| INTERNAL AFFAIRS, SERGEANT | ) | |
| JOSEPH BELANGER, CORPORAL | ) | |
| LISE MERSON, and C/O ROSALIE | ) | |
| VARGUS, | ) | |
| | ) | |
| Defendants. | ) | |

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GERRON MAURICE LINDSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C. A. No. 05-632-SLR |
| ) | |
| ATTORNEY GENERAL JANE BRADY, ) | JURY TRIAL DEMANDED |
| WARDEN THOMAS CARROLL, ) | |
| COMMISSIONER STANLEY TAYLOR, ) | |
| BUREAU CHIEF PAUL HOWARD, ) | |
| INTERNAL AFFAIRS, SERGEANT ) | |
| JOSEPH BELANGER, CORPORAL ) | |
| LISE MERSON, and C/O ROSALIE ) | |
| VARGUS, ) | |
| ) | |
| Defendants. ) | |

### AFFIDAVIT OF SGT. JOSEPH BELANGER

I, Joseph Belanger, having been duly sworn according to law, depose and state as follows:

1. I make this Affidavit based upon personal information.

2. I am employed by the State of Delaware's Department of Correction as a Correctional Sergeant at the Delaware Correctional Center ("DCC") in Smyrna, Delaware.

3. On February 23, 2005, during the 8:00 a.m. to 4:00 p.m shift, I was the Building Sergeant in Building 17 in the Secure Housing Unit ("SHU") at DCC.

4. Plaintiff Gerron Lindsey was an inmate housed in Building 17.

5. At approximately 8:57 a.m., at the request of Nurse Holly Furne ("Nurse Furne"), an employee of the medical contractor, prison staff escorted Plaintiff to the medical room in Building 17, where Plaintiff was given a breathing treatment.

6. Shortly thereafter, my staff advised me that Plaintiff had been escorted to the

medical room. I was also advised that, at Nurse Furne's direction, Plaintiff had been taken to the medical room for a breathing treatment the prior day.

7. I also learned that Nurse Furne was not assigned to be working in Building 17 at that time and that her shift had ended at 7:00 a.m.

8. Prior to February 23, 2005, I had received information that Nurse Furne and Plaintiff may have been involved in a personal relationship.

9. Shortly before 9:40 a.m., I proceeded to the medical room in Building 17, where Plaintiff and Nurse Furne were located.

10. Upon my arrival in the medical room, Nurse Furne terminated Plaintiff's breathing treatment.

11. At that time, Plaintiff did not appear to be in any medical or physical distress.

12. The circumstances of Plaintiff's presence in the medical room presented security concerns. In particular, Nurse Furne was not supposed to be in that area, and there was a suspicion that her relationship with Plaintiff was of a personal nature. I perceived a risk of the passing of contraband from Nurse Furne to Plaintiff.

13. An inmate's possession of contraband, such as items that can be used as weapons, may pose a serious threat to the security of the institution and the safety of other inmates and staff.

14. Therefore, prior to returning Plaintiff to his housing unit, I had him escorted to the showers. With the assistance of Sgt. Joseph Macchiarelli, I strip-searched Plaintiff to ensure that he was not in possession of contraband.

15. At that time, Plaintiff asked to speak with mental health. I arranged for Plaintiff to meet with one of the mental health workers. Plaintiff did not request medical assistance.

                                                                                                             Sgt. Joseph Belanger

SWORN AND SUBSCRIBED before me this _13_ day of April, 2007.

                                                                                                              Notary