IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

GERRON MAURICE LINDSEY,

   Plaintiff,

   v.

Warden Thomas Carroll,

Commissioner Stanley Taylor,

Bureau Chief Paul Howard,

Internal Affairs,

✱ Sergeant Joseph Bellanger, ✱

Corporal Lise Merson, and

C/o Rosalie Vargus,

   Defendants.

C.A. No. 05-632-SLR

JURY TRIAL DEMANDED



BD scanned

## ANSWER

COME NOW Plaintiff Gerron Lindsey, Pro Se, respectfully request that this Honorable Court enter an order denying defendants motion for Summary Judgment on the grounds set forth in the following Memorandum of points and Authorities.

## BACKGROUND

The plaintiff Generally agrees with most of the history outlined in the defendants motion. However, page 3 of the defendants Memorandum sets forth incorrect facts. For example defendant Bellanger urges the Court to believe that Nurse Holly Furne was not supposed to be working in the area and he suspected Nurse Holly Furne to be passing Contraband to the plaintiff. (See page 3 of defendants memorandum). Apparently defendant has recently come up with this story to advance his defense because his incident report Completely Contradicts this Claim. For example, based on defendant Bellanger

2

incident report the purpose for him ending the breathing treatment was so that he could return to his work. Nothing in the defendant's incident report indicates that he suspected the nurse to be passing contraband or this nurse being out of her area. (See Exhibit B of plaintiff's Answer). Accordingly, defendant Bellanger has recently come up with these claims to possibly advance his defense.

## ARGUMENT

The plaintiff generally agrees with the standard for summary judgment that the defendants have set forth. However, defendants are not entitled to judgment as a matter of law because Plaintiff can present evidence which demonstrates genuine issue as to material fact.

Because defendant Bellanger prevented Plaintiff from recieving medical treatment, he acted with deliberate indifference. As a result, Plaintiff Eighth Amendment rights has been violated and defendant is not entitled to Summary Judgment.

The standard for deliberate indifference.

According to the United States Supreme Court in Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L.Ed. 2d 251 (1976), the government is obligated to provide medical care for those whom it is punishing by incarceration. The standard enunciated in Estelle is two-pronged:

(1) It requires deliberate indifference on the part of the prison official and

(2) It requires the prisoner's medical needs to be serious. Id. at 106, 97 S. Ct. 285. See also Durmer v. O'Carroll, 991 F. 2d 64, 67 (3d Cir. 1993). The Third Circuit has found "deliberate indifference" in a variety of

3

need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on non-medical reasons; (3) or prevents a prisoner from recieving needed or recommended medical treatment. Durmer, 991 F.2d at 68 (citing Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d cir. 1987)). A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d cir. 1976).

For example, in Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d cir. 1979), the court stated deliberate indifference is demonstrated "When ... prison authorities prevent an inmate from recieving recommended treatment for serious medical needs or deny access to physician capable of evaluating the need for such treatment.

The inmate's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury or death. Colburn v. Upper Darby Township, 946 F.2d 1017, 1024 (3d cir. 1991).

Further, courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment... which remains a question of sound professional judgment. Pierce, 612 F.2d. see also Dulany v. Carnahan, 132 F.3d 1234 (8th cir. 1997)

> The evidence before the court proves that defendant
> Bellanger was aware of Plaintiff's condition and acted
> with deliberate indifference. As a result defendant was in
> violation of the United States Constitution.

As noted in Plaintiff's complaint, On the morning of February 23, 2005, he was recieving nebulized albuterol treatment (breathing treatment) after Holly Furne, R.N. determined that plaintiff was suffering from breathing complications when defendant Joseph Bellanger entered the nurse's office and stated that

4

he was going to write the nurse and Plaintiff up because the breathing treatment was slowing his work down, and forced nurse Furne to end the treatment. At that point this nurse protested to defendant Bellanger that plaintiff had severe asthma that needed treatment and that it could be dangerous to cease the treatment since First Correctional Medical was very short-staffed and that Plaintiff's condition could worsen, potentially to a life-threatening level. (See Exhibit A-Affidavit of Holly Furne, R.N.)

In defendant Bellanger's deposition when asked was he aware of Mr. Lindsey's condition at the time the treatment was ended and upon entering the medical office what was his observation. He testified that he is not aware of any conditions at the time also he does not recall his observation upon entering the medical office. (See Exhibit F-defendant Bellanger's deposition). However defendant Bellanger's incident report completely contradicts his testimony. For example, in his incident report he stated:

> Inmate Gerron Lindsey was in the
> medical room recieving his breathing
> treatment until 0935 hours. (See Exhibit B).

Clearly, this demonstrates that Sergeant Bellanger was aware of Plaintiff's medical condition and was aware that plaintiff was recieving treatment for it (even assuming that defendant Bellanger did not know) nurse Furne made him aware when she protested to him that Plaintiff had severe asthma that needed treatment, however, still he proceeded to have this nurse to end the medical treatment.

Further, in defendant Bellanger's deposition he testified that he did not force nurse Furne to end Plaintiff's breathing treatment. However his incident report states:

> With all the events that took place from

5

> 0857 hours until 0935 hours, telephone
> punches and tier checks could not be
> accomplished as required by post orders/
> policy and procedures. (see Exhibit B).

The investigating Officer Thomas J. Seacord stated:

> I interviewed Nurse H. Furne and
> instructed that she could not take too long
> for each individual. Sgt. Bellanger did write
> a 404 on the incident. (See Exhibit D page 2 of 4).

As noted in Plaintiff's Complaint, defendant Bellanger forced Nurse Furne to end the breathing treatment after stating that it was slowing down his work. It is clear from defendant Bellanger's incident report and investigating officer Thomas J. Seacord report that it was deemed that Nurse Furne was taking too long with Plaintiff's breathing treatment. As a result, she was forced by defendant Bellanger to end the treatment.

Defendant Bellanger was not in a position to determine of second-guess a particular treatment or the lenghth of it, that remains a question of sound professional judgment. By the defendant forcing the nurse to end this treatment caused the Plaintiff unnecessary pain and suffering. Plaintiff was powerless at that point and had no choice but to endure such pain and suffering.

For these reasons defendant Bellanger violated Plaintiff Eighth Amendment rights of the United States Constitution. As a result, defendant Bellanger is not entitled to summary judgment on this claim.

Because of the deprivation of plaintiff's
Constitutional rights, he is entitled to Nominal
damages and Punitive damages.

The United States Supreme Court has recognized in Carey v. Piphus, 435 U.S.
247, 255, 98 S.Ct. 1042, 55 L.Ed. 2d 252 (1978) and Memphis Community Sch.
Dist. v. Stachura, 477 U.S. 299, 307, 106 S.Ct. 2535, 91 L.Ed. 2d 789 (1974),
that certain absolute Constitutional rights may be vindicated by an
award of nominal damages in the absence of any showing of injury
warranting compensatory damages. See Stachura, 477 U.S. at 308
n.11, 106 S.Ct. 2537. (Nominal damages, and not damages based on
some undefinable 'value' of infringed rights, are the appropriate
means of 'vindicating' rights whose deprivation has not caused
actual provable injury."); Carey 435 U.S. at 266, 98 S.Ct. 1042 (approving
recovery of nominal damages without proof of actual injury).
Punitive damages may also be awarded based solely on a Const-
itutional violation, provided the proper showing is made. Alexander v.
Riga, 208 F.3d 419, 430 (3d cir. 2000); BaSista v. Weir, 340 F.2d 74, 87
(3d cir. 1965); See also Coleman v. Kaye, 87 F.3d 1491, 1497 (3d cir 1996)
(Punitive damages may be awarded under 42 U.S.C. § 1983 when
defendant's conduct is shown to be motivated by evil motive or
intent, or when it involves reckless or callous indifference to the
federally protected rights of others.") (quoting Smith v. Wade, 461 U.S.
30, 56, 103 S.Ct. 1625, 75 L.Ed. 2d 632 (1983)).
In Canell v. Lightner, 143 F.3d 1210, 1213 (9th cir. 1998), the Court of Appeals
for the Ninth Circuit held that, a prisoner plaintiff was not barred under
§ 1997(e) from asserting a claim for violation of his first
Amendment rights. Similarly, in Rowe v. Shake, 196 F.3d 778, 781-82
(7th cir. 1999) the Court of Appeals for the Seventh Circuit held that

7

§ 1997 e (e) did not bar a claim by a prisoner plaintiff seeking nominal damages and declaratory relief for deprivation of their First Amendment rights.

In this case, plaintiff was deprived of his Eighth Amendment rights of the United States Constitution. As noted previously, plaintiff was recieving breathing treatment when defendant Bellanger forced the nurse to end it. While plaintiff has not suffered a permanent loss and may not be entitled to compensatory damages, he still endured pain and suffering until his breathing returned to normal.

As a result, he was denied a federally protected right and is entitled to nominal damages and punitive damages. Therefore, defendant Bellanger is not entitled to Judgment on this claim.

8

Because Defendant Bellanger deprived plaintiff of a right
secured by the United States Constitution he is not shielded
by the Eleventh Amendment and can be held liable in his
official and individual capacity.

According to Robb v. City of Philadelphia, 733 F. 2d 286, 290 (3d. Cir. 1984), In order
to establish a valid civil rights claim, the plaintiff must demonstrate that
the conduct complained of was committed by a person acting under
state law and "that the conduct deprived plaintiff of rights, privileges or
immunities secured by the Constitution."
In determining whether defendant is entitled to claim of qualified immunity,
the court engages into a three part inquiry:
　　　　　　　　　　(1) Whether the plaintiff alleged a
violation of his constitutional rights;
　　　　　　　　　　(2) Whether the right alleged to
have been violated was clearly established in the existing law at the
time of the violation; and
　　　　　　　　　　(3) Whether a reasonable official
knew or should have known the alleged action violated the plaintiff's
rights. Rouse v. Plantier, 182 F. 3d 192 C. A. 3 (N.J.) 1999.
In Hafer v. Melo, 502 U.S. 21, 112, S. Ct. 358, 365, 116 L. Ed. 2d 301 (1991), The
United States Supreme Court held that Eleventh Amendment does not bar
federal Section 1983 action against State officials in their individual
capacity for conduct undertaken as part of their state jobs and
duties. See also Scheuer v. Rhodes, 416 U.S. 232, 237, 94 S. Ct. 1683, 1686-87,
40 L. Ed. 2d 90 (1974). It has been well settled that the Eleventh Amend-
ment provides no shield for State official confronted by a claim that
he had deprived another of a federal right under the color of state

9

law. Exparte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

In this case, as previously noted, plaintiff was deprived by defendant of a right secured by the United States Constitution. At the time of the deprivation defendant was employed by the Department Of Corrections and acting under State law.

Further, at the time of the deprivation defendant was in a reasonable state of mind and should had known by him forcing the nurse to end the breathing treatment violated plaintiff's rights. Moreover, the nurse made defendant aware that plaintiff's condition could worsen to a life threatening level. (See Exhibit A) As a result, defendant is not shielded by the Eleventh Amendment and is liable in his individual and official capacity. Therefore, defendant is not entitled to Judgment on this Claim.

10

## Plaintiff Agrees That The Strip Search Did Not Arise To A Constitutional Violation.

Plaintiff is not in a position to determine what is a Valid Security Concern.

Therefore, plaintiff waives this claim.

11

# CONCLUSION

WHEREFORE, for the reasons set forth, Plaintiff respectfully request that this court deny defendants motion for Summary Judgment.

Respectfully Submitted,

Derron Lindsey

Dated: May 8, 2007

12

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 8, 2007

13

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2007, I served the Clerk of the Court with plaintiff's reply to defendants motion for Summary Judgment and served Ralph Durstein, Deputy Attorney General.

Gerron Lindsey
1181 Paddock Road
Smyrna, Del. 19977

## AFFIDAVIT

I, HOLLY FURNE RN, hereby affirm as follows:

1.      That, on or about February 23, 2005, I was employed as a night shift RN by FIRST

CORRECTIONAL MEDICAL, at DELAWARE CORRECTIONAL FACILITY,

Smyrna, Delaware where inmate GERRON M. LINDSEY was incarcerated in the

SuperMaximum Housing Unit, hereinafter known as the SHU.

2.      That in the Nurse's job duties I was required to pass medications to inmates

throughout the facility and provide urgent or emergent care to inmates on a scheduled and

unscheduled basis.

3.      That in my experience as a Registered Nurse, I was required to be knowledgeable

about several hundred inmates' medication requirements and medical conditions,

including Inmate LINDSEY'S' history of ALLERGIES and ASTHMA.

4.      That I had administered asthma medications frequently to Inmate LINDSEY and

others, including nebulizer treatments and metered dose inhalers.

5.      That the night shift Nurses had to begin medication pass at approximately 2:30 a.m.

and continuing until 4:30-5:00 a.m. in the SHU, where Inmate LINDSEY was housed.

6.      That Nursing Staff would request Correctional Officers to bring out inmates to the

medical office or escort the Nurse to the tier to see the inmate, as staffing or circumstances

required.

7.      That Nursing Staff also had scheduled time to conduct Inmate Sick Call with

Correctional Officers to be made available to remove the Inmate from his cell, apply

handcuffs and leg-shackles, and prevent any untoward incidents between Inmate and

medical staff.

Exhibit A

8.      That Inmate LINDSEY complained to this Nurse or to the Corectional Officer assigned to his tier that he was short of breath, felt chest tightness, and was wheezing more severely, which was minimally responsive to use of his metered-dose inhalers, such that this Nurse requested Correctional staff to bring Inmate LINDSEY to the medical office in the building after medication-pass for more complete assessment, peak flow measurement and nebulized albuterol treatment, with referral to the MD for possible additional medications.

9.      Based on Inmate LINDSEY's  past history of severe asthma exacerbations, this Nurse deemed it necessary to bring Inmate LINDSEY out for treatment both due to the severity of the problem, his past history, and lack of physician and Nurse Practitioner coverage/appointments in a timely fashion.

10.     That on or about the morning of February 23, 2005, Inmate Lindsey complained to either this Nurse or the Correctional Officer that he felt more short of breath than usual and this Nurse requested the Correctional Officers bring Inmate Lindsey to the medical office for re-evaluation, with the intention of trying to "squeeze" the Inmate into the MD's schedule when she arrived at the SHU later that day.

11.     That Inmate LINDSEY was brought down, assessed again from the previous night, found to still be "tight" with a poor peak flow for a young athletic male, and given a repeat nebulized albuterol treatment when the first treatment only produced minimal relief, as was common procedure in the facility and in the community, such as the ED where this RN currently works.

12.     That when the second treatment gave some additional benefit but Inmate LINDSEY wasn't certain if he could last the few hours necessary to wait to see the MD, or if he would even be able to see the MD that day, and SHU Inmates could not be readily

taken across the Compound to see a provider there, this Nurse opted to administer a third

treatment, since the peak flow was still unsatisfactory.

13.     That at this time it was approximately 8:30 a.m. and Sergeant Bellinger came by the

medical office and very angrily told this Nurse that she had to "stop the breathing

treatment" in progress, that he "couldn't tie up his officers for this period of time" and told

the officers to "take LINDSEY to the interrogation room", at which time the officers

picked LINDSEY up off the stool and proceeded to take him out of the office rapidly.

14.     That this Nurse protested to Sergeant Bellinger that Inmate LINDSEY had severe

asthma that needed treatment and that it could be dangerous to cease treatment since

FIRST CORRECTIONAL MEDICAL was very short-staffed and his condition could

worsen, potentially to a life-threatening level.

15.     Sergeant Bellinger continued to yell at this Nurse and Inmate LINDSEY, becoming

red-faced, angrily gesticulating and shouting that he "didn't care, he (Inmate LINDSEY)

had taken up enough of my officers' time", causing Inmate LINDSEY to say, "it's all right,

if you give me a new inhaler, I think I can get by" or words to that effect, at which time

LINDSEY tendered the empty inhaler to receive a new one.

16.     This Nurse watched the officers practically drag Inmate LINDSEY to the

Interrogation/Interview room, as I had seen correctional officers be physically forceful with

LINDSEY in the past, to make sure the officers and Sergeant Bellinger did not strike

Lindsey.

17.     This RN had witnessed Sergeant Bellinger make comments to Inmate LINDSEY

that appeared provocative in the past, for reasons not apparent to this Nurse and

incongruent with other superior officers' conduct toward this Inmate and other inmates.

18.     That Lieutenant Secord (not Captain Sager as described in Affidavit dated 12-21-05) came by the medical office immediately after Sergeant Bellinger stopped LINDSEY's treatment and apologized for Sergeant Bellinger's rudeness and stated medical staff did indeed have the present time available and that Sergeant Bellinger acted improperly in pulling LINDSEY out of his treatment.

19.     This RN then left the building and saw Inmate Lindsey handcuffed to the chair in the Interrogation room with Sergeant Bellinger appearing to be berating Inmate Lindsey.

20.     This RN then went to the SHU medical office, tried to locate Inmate Lindsey's chart, was unable to do so, and thus left a note on the desk for the MD, requesting that the MD see Inmate Lindsey that day if at all possible since his asthma symptoms were worse than usual and were not helped adequately by his inhalers and the nebulizer treatments.


_Holly Furne_
HOLLY FURNE, RN


_M. Michelle Preite_
NOTARY PUBLIC



M. MICHELLE PREITE
Notary Public
STATE OF TEXAS
My Commission
Expires 01/22/2011

Incident#
1020372

Date: 10/11/2006

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone#: 302-653-9261**

## INCIDENT REPORT

| Group: N/A | Type: Staff Incid... | Incident Date: 02/23/2005 | Time: 0857 | Confidential: No |

**Facility:** DCC Delaware Correctional Center       **Followup Required :** No

**Incident Location:** Bldg.17 Medical Room

**Location Description:** Medical Room

**Violated Conditions:** Other

**Description of Incident:**

On February 23, 2005, I Sgt. Joseph H. Belanger was assigned to Building 17 for the 0800 - 1600 shift. At approximately 0857 hours, Nurse Holly Furne had I/M Jeron Lindsay brought to the medical room for a breathing treatment. This occurred while recreation, visits, a mental health meeting between Melissa Gatlin and I/M Noel Santiago on D-tier and a discharge of I/M Mark Weir to take place was in progress. I/M Gerron Lindsay was in the medical room receiving his breathing treatment until 0935 hours. Two staff members had to be with I/M Lindsay while he received his breathing treatment.

With all of the events that took place from 0857 hours until 0935 hours, telephone punches and tier checks could not be accomplished as required by post orders/policy and procedures.

At approximately 0940 hours while I/M Lindsay was being placed in a shower, Sgt. Joseph Macchiarelli and I conducted a strip search of I/M Lindsay. While conducting the strip search of I/M Lindsay, he stated that he did not feel right and needed to speak with mental health. At that time, Femi from mental health was entering Building 17. I/M Lindsay was secured in the interview room on D-tier and Femi conducted an interview.

After the departure of medical and mental health from the unit, we was able to return to normal schedule and conduct the phone punches as outlined in the post orders/policy and procedures.

| Injured Persons | Hospitalized | Nature Of Injuries |
|---|---|---|
| N/A | N/A | N/A |

**Evidence Type:** N/A                                      **Date Collected:** N/A

**Discovered By :** N/A                              **Secured By:** N/A

**Type of Force Used** [ ]   PHYSICAL   [ ]   CHEMICAL [ ]   STUN [ ]   OTHER   [ ]   CAPSTUN [X]   NONE

**Restraints Used**   : N/A

**Immediate Action Taken:**
N/A

| | Individuals Involved | | |
|---|---|---|---|
| Person Code | Name | SBI# | Title |
| Staff | Holly, Furne | N/A | Contractors - Medical |
| Staff | Joseph, Macchiarelli J | N/A | CO Corporal/Sgt. - Large Inst. |
| Staff | Joseph, Belanger | N/A | Shift Commander - Large Inst. |
| Inmate | Gerron, Lindsey M | 00326202 | N/A |

**Reporting Officer:** Belanger, Joseph  (Shift Commander - Large Inst.)       **Entered By:** Belanger, Joseph  (Shift Commander - Large Inst.)

| Approval Information |
|---|

[ X ]  **Approved** [ ] **Disapproved  Date:** 02/25/2005 **Approved by:** Mccreanor, Michael   (Shift Commander - Large Inst.)

**Comments:** N/A

Exhibit B

**FORM #584**

**GRIEVANCE FORM**

Sagers)

**FACILITY:** Delaware Correctional Center

**DATE:** February 23, 2005

**GRIEVANT'S NAME:** Gerron Lindsey A/K/A
Iqushal Shah

**SBI#:** 00 326202

**CASE#:** 1179

**TIME OF INCIDENT:** Approx. 9:00 am

**HOUSING UNIT:** SHU-17  D-L4

**BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED IN THE INCIDENT OR ANY WITNESSES.**

On the above date and approx. time I was in the nurses office in SHU-17 getting treated by Nurse Holly F. for my breathing trouble. At this time I was accompanied by Correctional officers Turner & Nikapara. In the process of me getting treated for my breathing trouble. Sergeant J. Bellanger entered the office, and told myself and Nurse Holly F. that he was writing the both of us up for me recieving treatment because it was slowing his work down. As my medical record show I am an asthma patient and in my past I have been hospitalized because of this condition. So because Sergeant Bellanger was in a hurry to get his work done he make threats to write myself up and Nurse Holly F. and he forced her end the treatment. After I was escorted back to D-tier by the officers I was placed in the Shower. At this point Sergeant J. Next page.

**ACTION REQUESTED BY GRIEVANT:** I request that my medical chart be reviewed to verify that I am a asthma patient. I also asked that Sergeant J. Bellanger not end my medical treatment when it's needed. And I request that action be taken against Sergeant J. Bellanger for harassment and cruel and unusual punishments

**GRIEVANT'S SIGNATURE:** _(signature)_    **DATE:** 2-23-05

**WAS AN INFORMAL RESOLUTION ACCEPTED?** _____ (YES) _____ (NO)

**(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)**

**GRIEVANT'S SIGNATURE:** _____    **DATE:** _____

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE CO____**

cc: **INSTITUTION FILE**
    **GRIEVANT**

**RECEIVED**

FEB 2 5 2005

Inmate Grievance Office

April '97 REV

Exhibit C.

Bellanger came up to the Shower and told me to Strip down and give him all of Clothes that I had on. Not only did he end my much needed medical treatment he also acted out of Spite and made me Strip for no reason at all. A shake down was not being conducted and my room wasnot shook down this was his way of getting back at me. Asthma is a chronic disease and if it's not treated properly it could be fatal. That is what Sergeant J. Bellanger Subjected me to by forcing the nurse to end my treatment. He also had no reason to Strip search me. I was cuffed by hands and feet and in the presence of two officers.

End of Complaint

RECEIVED

SEP 2 2005

Inmate Grievance Office

# aclu delaware

March 16, 2005

Mr. Gerron Lindsey
Delaware Correctional Center
SBI# 326202
1181 Paddock Road
Smyrna, DE 19977

Dear Mr. Lindsey:

The ACLU has referred your case to the Delaware Center for Justice who can assist us in matters involving prison conditions or medical grievances. If they are able to intervene, they will require permission from you. I enclose a consent form which you must sign and date and return to that office.

I understand that your issue involves a complaint against Sgt. Joe Bellanger at the Delaware Correctional Center and that you have already written to Stanley Taylor and the Attorney General's office.

If available, enclose a copy of all grievances you have filed along with a detailed statement of the facts surrounding your complaint. Send this information along with the enclosed consent form to the Delaware Center for Justice at 100 West 10th Street, Suite 905, Wilmington, DE 19801. If they are able to assist you, they will contact you.

Thank you for contacting the ACLU.

Sincerely,

Diane Winters

Diane Winters
Intake Representative
Cc: Delaware Center for Justice

**american civil liberties union delaware**
100 West 10th Street • Suite 309 • Wilmington, Delaware 19801
(302) 654-3966

# Delaware Center for Justice
**100 West 10th Street, Suite 905**
**Wilmington, DE 19801**

## Adult Offender Services Program

**Date: March 28, 2005**

**Gerron Lindsey # 326202**
**Delaware Correctional Center**
**1181 Paddock Road**
**Smyrna, DE 19947**

**Dear Mr. Lindsey:**

This is to acknowledge receipt of your letter. After careful review of your letter, the following decision has been reached:

- ☐ We do not deal with the issue(s) in your letter
- ☐ We advise you to contact your institutional medical provider
- ☐ Provide additional information on the matter for follow up
- ☐ Contact your Counselor at the institution for help and guidance
- ☐ We will contact you upon further investigation and follow up
- ☐ File a grievance using the internal 4.4 Grievance Procedure
- ☐ Requested information enclosed
- ☑ **Other: DCJ received a referral letter from the ACLU. Please forward your concerns back to the agency so we can better assist you.**

Thank you for your interest in our agency.

Sincerely,

*Nikita Y. Robins*

Nikita Y. Robins
Case Manager, Adult Offender Services

**DCC  Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 06/27/2005

# GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** LINDSEY, GERRON M | **SBI#** : 00326202 | **Institution** : DCC |
| **Grievance #** : 11771 | **Grievance Date** : 02/23/2005 | **Category** : Individual |
| **Status** : Non Grievable | **Resolution Status :** | **Resol. Date :** |
| **Grievance Type:** Disciplinary | **Incident Date** : 02/23/2005 | **Incident Time :** |
| **IGC** : Vargas, Rosalie | **Housing Location :** Bldg 19, Upper, Tier B, Cell 9, Single |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** I was in the nurses offic in SHU 17 getting treated by Nurse Holly F for my breathing trouble. I was accompanied by Correctional officers Tunrer and Nikapara. Sergeant J. Bellanger entered the office and told myself and Nurse Holly F that he was writing the both of us up for me receiving treatment because it was slowing his work down. He forced her end the treatment.  Aftr I was escorted back to D tier I was placed in the showers. Sgt Bellanger came up to the shower and told me to strip down and give hime all of clothes that I had on.

**Remedy Requested** : I request that my medical chart be reviewed to verify that I am a asthma patient. i also ask that Sergeant J Bellanger not end my medical treatment when it's needed. And I request that action be taken against Sergeant J Bellanger for harassment and cruel and unusual punichment.

### INDIVIDUALS INVOLVED

| Type | SBI # | Name | |
|---|---|---|---|

### ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| **Medical Grievance :** NO | **Date Received by Medical Unit :** |
| **Investigation Sent :** | **Investigation Sent To** : Sagers, Clyde |
| **Grievance Amount :** | |

EXhibit D

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 06/27/2005

# INFORMAL RESOLUTION

OFFENDER GRIEVANCE INFORMATION

**Offender Name : LINDSEY, GERRON M**      **SBI#**          : 00326202      **Institution**      : DCC

**Grievance #**      : 11771      **Grievance Date** : 02/23/2005      **Category**      : Individual

**Status**          : Non Grievable      **Resolution Status:**      **Inmate Status :**

**Grievance Type:** Disciplinary      **Incident Date**      : 02/23/2005      **Incident Time :**

**IGC**          : Vargas, Rosalie      **Housing Location :**Bldg 19, Upper, Tier B, Cell 9, Single

INFORMAL RESOLUTION

**Investigator Name**   : Sagers, Clyde                          **Date of Report** 02/28/2005

**Investigation Report :**

**Reason for Referring:**

---

**Investigator Name**   : Seacord, Thomas J                      **Date of Report** 03/03/2005

**Investigation Report :** I interviewed Nurse H. Furne and instructed that she could not take too long for each individual. Sgt Belanger did write a 404 on the incident.

**Reason for Referring:** Please investigate and resolve.

**Offender's Signature:**_____

**Date**          :_____

**Witness (Officer)**   :_____

DCC **Delaware Correctional Center**
Smyrna Landing Road
SMYRNA DE, 49977
Phone No. 302-653-9261

Date: 06/27/2005

# GRIEVANCE INFORMATION - IGC

**OFFENDER GRIEVANCE INFORMATION**

| | | |
|---|---|---|
| **Offender Name :** LINDSEY, GERRON M | **SBI#** : 00326202 | **Institution** : DCC |
| **Grievance #** : 11771 | **Grievance Date** : 02/23/2005 | **Category** : Individual |
| **Status** : Non Grievable | **Resolution Status :** | **Inmate Status :** |
| **Grievance Type:** Disciplinary | **Incident Date** : 02/23/2005 | **Incident Time :** |
| **IGC** : Vargas, Rosalie | **Housing Location :** Bldg 19, Upper, Tier B, Cell 9, Single | |

**IGC**

**Medical Provider:**                                    **Date Assigned**

**Comments:**


☐ **Forward to MGC**              ☐ **Warden Notified**

☑ **Forward to RGC**              **Date Forwarded to RGC/MGC :** 03/03/2005

☐ **Offender Signature Captured**    **Date Offender Signed**          :

DCC  Delaware Correctional Center                                    Date: 06/27/2005
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

# GRIEVANCE INFORMATION - RGC

## OFFENDER GRIEVANCE INFORMATION

**Offender Name :** LINDSEY, GERRON M     **SBI#** : 00326202     **Institution** : DCC
**Grievance #** : 11771     **Grievance Date** : 02/23/2005     **Category** : Individual
**Status** : Non Grievable     **Resolution Status :**     **Inmate Status :**
**Grievance Type:** Disciplinary     **Incident Date** : 02/23/2005     **Incident Time :**
**IGC** : Vargas, Rosalie     **Housing Location :** Bldg 19, Upper, Tier B, Cell 9, Single

## RGC

**Date Received** : 03/03/2005          **Date of Recommendation:** 06/27/2005

### GRIEVANCE COMMITTEE MEMBERS

| Person Type | SBI # | Name | Vote |
|---|---|---|---|

### VOTE COUNT

**Uphold :**          **Deny :**          **Abstain :**

### TIE BREAKER

| Person Type | SBI # | Name | Vote |
|---|---|---|---|

### RECOMMENDATION

Non-grievable. Disciplinary

**R. G. C Recommendation**
This must be completed & returned to the I. G. C. within 30 calendar days

**Grievant's Name:** Lindsey, Gerron  **SBI:** 00326202  **Case#:**11771

Non Grievable
Disciplinary

**R. G. C. Menbers:**

**Inmate Representative:** _____

**Inmate Representative:** _____

**Counselor:** _____

**Security:** _____

**I.G.C.:** _____

**CC:** File
    Grievant

EXhibit E

SEALED

43

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GERRON LINDSEY,
    Plaintiff,

    v.

ATTORNEY GENERAL JANE BRADY,
et al,   Defendants.

Civ. No. 05-632-SLR



FILED

NOV 2 0 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

scanned

The following questions are for defendant Joseph Belanger for
the taking of deposition. (D.I. 33).

Question 1. What was your purpose in forcing the nurse to end
Plaintiff Gerron Lindsey breathing treatment?

Question 2. Were you aware of Plaintiff Gerron Lindsey Condition
at the time the treatment was ended?

Question 3. Are you certified medical personell?

Question 4. What is currently your rank for the department of
correction?

Question 5. Upon you entering the medical office What
was your observation?

Question 6. Have you ever been Convicted of any crimes
in any State? If So please identify What you were
Charged with.       Exhibit F

Question 7. Other than what is stated in your Incident report was there any other reason that the nurse was forced to end Plaintiff Gerron Lindsey breathing treatment?

Question 8. During the breathing treatment was Plaintiff Gerron Lindsey secured in any handcuffs or shackles. (If yes please describe how so)

Question 9. What is the standard operating procedure when medical staff deems a treatment for a inmate to be needed?

Question 10. Is it normal procedure for inmates to be strip down and searched after returning to their housing area from medical.

## Certificate of Service

I hereby certify that on November 16, 2006, I mailed by U.S.
Postal Service, ten questions to the Clerk of Court in the matter
of (D.I. 33),

Devon Lindsey

JOSEPH BELANGER
DEC. 19, 2006

1    I DID NOT FORCE NURSE Holly FURNE To END
     BREATHING TREATMENT ON JERROD LINDSAY

2)   I AM NOT AWARE OF ANY CONDITIONS AT THE TIME

3)   I CANNOT ANSWER THE QUESTION WITHOUT CLEAR
     UNDERSTANDING OF QUESTION

4)   CORRECTIONAL SERGEANT

5)   I DO NOT RECALL

6)   YES, DUI FIRST OFFENSE IN STATE OF DELAWARE

7)   NURSE WAS NOT FORCED To END BREATHING TREATMENT

8)   I DO NOT RECALL

9)   PROVIDE TREATMENT

10)  YES IF THERE IS PROBABLE CAUSE
     / / / / / / / / / /
     JOSEPH H. BELANGER
     DEC. 19, 2006

Deposition of Joseph Belanger

Eileen Kelly Dec. 19, 2006

6.   Objection as to relevance.

Eileen Kelly
Eileen Kelly
Attorney for Defendant Joseph Belanger