IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GERRON MAURICE LINDSEY,<br><br>Plaintiff,<br><br>v.<br><br>ATTORNEY GENERAL JANE BRADY, WARDEN THOMAS CARROLL, COMMISSIONER STANLEY TAYLOR, BUREAU CHIEF PAUL HOWARD, INTERNAL AFFAIRS, SERGEANT JOSEPH BELANGER, CORPORAL LISA MERSON, and C/O ROSALIE VARGUS,<br><br>Defendants. | Civ. No. 05-632-SLR |

Gerron Maurice Lindsey, Smyrna, Delaware, pro se Plaintiff.

Ralph K. Durstein, III, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: March 11, 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On August 29, 2005, pro se plaintiff Gerron Maurice Lindsey ("plaintiff") filed the present complaint (D.I. 1), pursuant to 42 U.S.C. § 1983,[1] against defendant Sergeant Joseph Belanger ("defendant")[2] for allegedly violating his constitutional right to receive medical treatment under the Eighth Amendment. Presently before the court is defendant's motion for summary judgment.[3] For the reasons set forth below, defendant's motion is granted. (D.I. 59)

## II. BACKGROUND

In February 2005, plaintiff was an inmate at the Delaware Correctional Center ("DCC") in Smyrna, Delaware and was housed in building seventeen of the Secure Housing Unit ("SHU"). (D.I. 60, ex. A at 3-5) Plaintiff suffers from chronic asthma and the DCC supplied him with two inhalers to keep in his cell: Qvar for twice daily use and Albuterol for use in emergencies, such as shortness of breath. (Id. at 6-7) On the

[1]"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Estelle v. Gamble, 429 U.S. 97, 104 (1976).

[2]On May 14, 2007, plaintiff filed a notice of dismissal for defendants Thomas Carroll, Stanley Taylor, Paul Howard, Internal Affairs, Lisa Merson and Rosalie Vargas. (D.I. 64) Also, plaintiff signed a stipulation of dismissal for defendant Jane Brady on March 5, 2007, making Sergeant Joseph Belanger the sole remaining defendant in the instant case. (See D.I. 55)

[3]Plaintiff waives, in his answering brief, his allegation that defendant subjected him to an unconstitutional strip search. (D.I. 63 at 10)

morning of February 23, 2005, security escorted plaintiff to the prison medical department in building seventeen because his Albuterol inhaler failed to relieve his asthma symptoms. (Id. at 8-9)

At the medical office, Nurse Holly Furne ("Nurse Furne") administered several nebulized Albuterol treatments ("breathing treatment") to relieve plaintiff's shortness of breath. (Id. at 10; D.I. 63, ex. A at ¶ 8) When the "first treatment only produced minimal relief," Nurse Furne repeated the breathing treatment. (D.I. 63, ex. A at ¶ 11) The second treatment provided plaintiff with some additional relief, after which Nurse Furne decided to administer a third treatment. (Id. at ¶ 12) Plaintiff received these breathing treatments in the medical office from 8:57 a.m until 9:40 a.m. (D.I. 60, ex. C)

Five to ten minutes into the third breathing treatment, plaintiff alleges that defendant entered the medical office and ordered Nurse Furne to stop the treatment. (Id., ex. A at 12) Nurse Furne testified that she told defendant that plaintiff "had severe asthma that needed treatment and that it could be dangerous to cease treatment since [the prison medical department] was very short staffed and his condition could worsen, potentially to a life threatening level." (D.I. 63, ex. A at ¶ 14) Defendant allegedly stated that the treatment "took up enough of his time" and "was holding him up from doing his work." (D.I. 60, ex. A at 12) Plaintiff further alleges that defendant warned he would write-up both plaintiff and Nurse Furne for wasting his time. (Id. at 14)

Defendant denies that he forced Nurse Furne to stop the breathing treatment. (D.I. 47 at ¶ 1) Defendant alleges that when Nurse Furne terminated the breathing treatment, "[p]laintiff did not appear to be in any medical or physical distress." (D.I. 61 at ¶ 11) Nurse Furne testified that plaintiff said, "It [is] all right if you give me a new

inhaler, I think I can get by." (D.I. 63, ex. A at ¶ 15)

Defendant further testified that he had received information prior to February 23, 2005 regarding the possibility of a personal relationship between plaintiff and Nurse Furne. (D.I. 61 at ¶¶ 8, 12-13) Based on this, defendant perceived as a security risk the possibility that Nurse Furne might pass contraband to plaintiff. (Id.) Defendant and two other officers removed plaintiff from the medical office and escorted him to the shower and conducted a strip search for contraband. (D.I. 60, ex. A at 12)

Plaintiff subsequently met with a mental health counselor, from whom he did not request medical assistance, and returned to his cell where he received a new Albuterol inhaler from the medical office. (Id. 16-17; D.I. 61 at ¶ 15) Plaintiff alleges he continued to experience shortness of breath when he returned to his cell. (D.I. 60, ex. A at 17-18) At some point thereafter, plaintiff's breathing eventually returned to normal. (Id. at 18) Plaintiff testified that the incident in the medical office did not cause him any continuing physical problems. (Id. at 29)

On February 25, 2005, defendant submitted an incident report describing what occurred in the medical office on February 23, 2005. (Id. ex. C) The incident report indicates that officers could not complete their assigned duties because two officers had to accompany plaintiff during his breathing treatment. (Id.) Consequently, a staffing problem arose because various prison activities were in progress simultaneously, such as recreation, visits, a mental health meeting and an inmate discharge. (Id.) Specifically, officers were not able to complete "telephone punches [,] and tier checks could not be accomplished as required by post orders/policy and procedures." (Id.) In addition, Thomas J. Seacord, the prison officer who investigated

the incident, instructed Nurse Furne "that she could not take too long for each individual." (D.I. 63, ex. D)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).

The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential

element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A pro se complaint is liberally construed and held to a standard less stringent than formal pleadings drafted by lawyers. Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007).

## IV. DISCUSSION

### A. Deliberate Indifference

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Plaintiff brings the instant complaint on the theory that defendant was deliberately indifferent to his right to receive treatment for a serious medical need. Id. "Deliberate indifference" occurs when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). According to plaintiff, defendant's act of deliberate indifference intentionally interfered with and prevented him from receiving Nurse Furne's recommended treatment for his asthma. See Estelle, 429 U.S. at 105; Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Even when taking as true Nurse Furne's affidavit stating that she warned defendant that plaintiff's asthma could become worse or potentially life threatening, a reasonable jury cannot find that defendant acted with deliberate indifference. (D.I. 63, ex. A at ¶ 14) In particular, defendant could not have drawn an inference from Nurse

Furne's statement that a substantial risk of serious harm to plaintiff presently existed because she merely said plaintiff's asthma "could" worsen or become "potentially" life threatening.[4] See Colburn v. Upper Darby Township, 946 F.2d 1017, 1024 (3d Cir. 1991) (holding that deliberate indifference is not the mere possibility a harm will occur, rather a strong likelihood); (Id.) Therefore, sufficient evidence is absent from the record that would allow a reasonable jury to find that defendant knew of, and disregarded, a substantial risk of serious harm to plaintiff.

**B. Serious Medical Need**

In addition, plaintiff fails to establish that he had a serious medical need. A "serious" medical need arises when an inmate's condition is "such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death." Colburn, 946 F.2d at 1023. A medical need also is considered serious "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss." Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Furthermore, a medical need is serious when it "has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Id. at 347. Courts will not question the sound judgment of medical professionals as to "propriety or adequacy of a particular course of treatment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (1979).

---

[4]The record indicates that plaintiff said, at the time the treatment was terminated, "It [is] all right if you give me a new inhaler, I think I can get by." (D.I. 63, ex. A at ¶ 15) Plaintiff did receive a new inhaler when he was placed back in his cell and choose not to use the inhaler for fear it could actually worsen his condition. (D.I. 60, ex. A at 17-18)

The record indicates that plaintiff was not suffering from a severe asthma attack subsequent to, or at the time the breathing treatment was terminated. See Bates v. Sullivan, 6 Fed. Appx. 425, 426 (7th Cir. 2001) (non-precedential) (finding an inmate had not suffered a serious asthmatic attack, thus, his shortness of breath and headaches were not proven serious enough to implicate the Eighth Amendment).[5] Plaintiff claims that, prior to returning to his cell, his "condition hadn't improved at all" and, after he returned to his cell, he still experienced shortness of breath. (D.I. 60, ex. A at 16-18) The record shows that plaintiff received three breathing treatments: (1) his first treatment provided relief, albeit minimal; (2) his second treatment provided some additional relief; and (3) his third treatment was terminated within five to ten minutes. (D.I. 63, ex. A at ¶¶ 11, 12) Furthermore, no evidence exists that plaintiff, subsequent to the incident, put in a sick call slip, or sought additional medical attention. (D.I. 61 at ¶ 15) Moreover, plaintiff testified that the incident did not cause him continuing medical problems. (D.I. 60, ex. A at 29) For the above mentioned reasons, a reasonable jury cannot determine that subsequent to, or at the time the breathing treatment was terminated, plaintiff experienced a serious medical need.[6]

---

[5]Cf. Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999) (finding a layperson would consider relatively minor an inmate's "breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy," if a physician has not deemed them as serious); and Oliver v. Deen, 77 F.3d 156, 160 (7th Cir. 1996) (holding Eighth Amendment not implicated when medical records evaluate inmate's asthma as only a mild case) with Hathaway v. Coughlin, 37 F.3d 63, 68 (2d Cir. 1994) (holding inmate's degenerative hip disease constituted a serious medical condition when prison physician failed to inform inmate of two broken surgical pins in his hip).

[6]Based on the aforementioned reasons, plaintiff is not entitled to nominal or punitive damages. In addition, defendant is entitled to summary judgment based on qualified immunity because he did not violate a constitutional right. See Saucier v.

**V. CONCLUSION**

For the above reasons, the court grants defendant's motion for summary judgment. (D.I. 51). An appropriate order shall issue.

---

Katz, 533 U.S. 194, 201 (2001) (holding officer's conduct must violate a constitutional right).